UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

RAYMUNDO GARCIA,

       Plaintiff,

  -v-                                                        No.  06 Civ. 746 (LTS)(DCF)

CITY OF NEW YORK et al.,

       Defendants.

----------------------------------------------------------x

### MEMORANDUM OPINION AND ORDER

Plaintiff Raymundo Garcia ("Plaintiff") brings this action against the City of New York, the New York City Police Department, New York City Police Department Detective Beth Williams (Shield No. 05437) ("Detective Williams")[1], and "John Doe" (Shield No. 13912) ("UC13912"), asserting claims of excessive force, false arrest and malicious prosecution. Plaintiff also asserts claims against the City of New York for its alleged negligent training and supervision of its police officers and its negligent mismanagement of the Manhattan District Attorney's Office ("DA's Office"). All claims arise under 42 U.S.C. § 1983 and the Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331.

Defendants City of New York and Detective Williams (collectively, "Defendants") have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, seeking dismissal of all the claims asserted against them. The Court has reviewed thoroughly and

---

[1]     Detective Williams is identified in the caption of the complaint by her maiden name, Robinson. The Court uses the last name "Williams" herein. See Def. Mem. at 1, n.1.

considered carefully all of the parties' submissions.[2] For the following reasons, the Defendants' motion will be granted in its entirety.

With respect to the other two named defendants, Plaintiff has never identified UC13912 to the Court nor served him with process, despite deposing him during discovery. Accordingly, Plaintiff's claims against defendant "John Doe" (Shield No. 13912) will be dismissed without prejudice pursuant to Rule 4 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 4(m). Furthermore, Plaintiff's claims against the New York City Police Department, an entity that cannot be sued independently because it is an agency of the City of New York, will also be dismissed. See New York City Charter, Chapter 17 § 396 (2008) (providing that "All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); Wilson v. City of New York, 800 F. Supp. 1098, 1101 (E.D.N.Y. 1992).

BACKGROUND

The following facts are undisputed unless otherwise noted. As familiarity with the proceedings and submissions is assumed, this summary only recites those facts necessary to adjudicate the instant motion. As part of an undercover "buy and bust" operation, UC13912 approached an unidentified individual, "J.D. Crooked Eye," and asked him about purchasing drugs. (Myrvold Decl., Ex. 10.) J.D. Crooked Eye responded that he could facilitate a deal. (Id.) UC13912 gave J.D. Crooked Eye a twenty dollar bill and observed J.D. Crooked Eye approach "J.D. Beige Pants," who was sitting nearby, and make a "hand to hand" exchange with him. (Id.;

---

[2] Although Plaintiff's submission in opposition to Defendants' motion for summary judgment did not conform in important respects with the Individual Practice Rules of the undersigned and the Local Rules of the Southern District of New York, the Court in this instance exercises its discretion to consider them.

Wisham Decl., Ex. 4, p. 14.)  J.D. Crooked Eye returned to UC13912 and gave him the promised package of drugs, which contained three green plastic bags of crack cocaine.  (Def. 56.1 Stmt. ¶¶ 2-3.)[3]  The transaction occurred in the vicinity of 3371 Broadway, New York, New York.  (Myrvold Decl., Ex. 10.)  Based on the information provided by UC13912, Detective Williams, a detective assigned to the Manhattan North Narcotics Division of the New York City Police Department, arrested "J.D. Beige Pants" shortly thereafter.[4]  (Def. 56. 1 Stmt. ¶ 3; Pl. Ex. 5, p. 6.)  UC13912 subsequently made a post-arrest identification of Plaintiff as "J.D. Beige Pants" and conducted a field test of the purchased narcotics, which indicated that they contained cocaine.  (Def. 56.1 Stmt. ¶ 5, Myrvold Decl. Ex. 5.)

       Plaintiff was charged with the criminal sale of a controlled substance in the third degree and the criminal sale of a controlled substance near school grounds, pursuant to New York Criminal Penal Law §§ 220.39(1) and 220.44(2), respectively.  (Def. 56.1 Stmt. ¶¶ 13-14.)  Section 220.44(2) requires that the criminal sale occur within one thousand feet of an educational facility.  New York Penal Law § 220.44(2) (McKinney 2008).  The arresting officer (Detective Williams), consistent with her training with the New York City Police Department, did not measure the exact distance between the transaction at issue and the nearest educational facility,[5] but rather relied on an estimate, which she provided in an affidavit to the DA's Office.  (Wisham Decl., Ex. 5, p. 56.)  The

---

[3]     Citations to the parties' respective Local Rule 56.1 statements incorporate by reference citations to the underlying evidentiary submissions.

[4]     Detective Williams made the arrest as part of a team of arresting officers.  In her deposition testimony, Detective Williams equivocated regarding whether she or one of her colleagues had actually made the arrest. Resolution of this factual question is not necessary to determine any of the questions presented in the instant motion.

[5]     The nearby school is New York Public School 192, which is located at 500 West 138th Street, New York, New York, 10031.

DA's Office subsequently relied on that affidavit to indict Plaintiff on the specific charge of sale of a controlled substance near a school. (Id. ¶ 55.)

On October 4, 2002, the Grand Jury of the Special Narcotics Courts of the City of New York ("Grand Jury") issued an indictment accusing Plaintiff of the crimes charged (the "Indictment"). (Def. 56.1 Stmt. ¶ 15.) Plaintiff pleaded not guilty to each offense on October 17, 2002. After being detained pursuant to the Indictment for approximately five months, Plaintiff was released from custody on February 28, 2003. (Id. ¶ 16.) All charges against Plaintiff were dismissed in Plaintiff's favor on March 29, 2003. (Myrvold Decl., Ex. 9.) Plaintiff denies any involvement in the drug sale at issue. (Myrvold Decl., Ex. 6, p. 19.) Plaintiff initiated this action on January 31, 2006.

## DISCUSSION

Summary judgment should be rendered when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is therefore entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For the purposes of summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of the non-moving party. In re "Agent Orange" Prod. Liab. Litig., 517 F.3d 76, 87 (2d Cir. 2008). The moving party bears the burden of establishing an absence of any genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). However, the non-moving party cannot avoid summary judgment through vague assertions regarding the existence of disputed material facts, or "defeat the motion through mere speculation or conjecture." W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990). Moreover, "[f]actual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248.

*Plaintiff's Excessive Force and False Arrest Claims*

Plaintiff alleges that he was falsely arrested and that the arresting officer, by applying handcuffs too tightly, employed excessive force in the course of his arrest. The Fourth Amendment prohibits both the arrest of a person without probable cause and the use of excessive force by an arresting officer. See Graham v. Connor, 490 U.S. 386, 396 (1989) (excessive force); Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) (arrest without probable cause). The Court need not reach the merits of these claims because they are barred by the statute of limitations.

The parties agree that New York State's three-year limitations period for personal injury tort claims provides the applicable limitations period. Wallace v. Kato, 549 U.S. 384, 388 (2007); N.Y. C.P.L.R. § 214(5) (McKinney 2002). Plaintiff therefore is precluded from asserting excessive force or false arrest claims that accrued before January 31, 2003. The parties disagree as to the proper accrual date of these two claims: Defendants assert that Plaintiff's excessive force and false arrest claims accrued on September 29, 2002, the date on which he was arrested and allegedly subjected to excessive force, whereas Plaintiff asserts that these claims only accrued on March 29, 2003, the date of the favorable dismissal of the charges against him in the underlying criminal case.

"It is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action." Wallace, 549 U.S. at 388 (internal citations, quotation marks and brackets omitted). "The accrual date of a § 1983 action is a question of federal law that is *not* resolved by reference to state law." Id. (emphasis in original). An excessive force claim accrues under federal law at "that point in time when the plaintiff knows or has reason to know of the injury which is the basis of his action." Singleton v. City of New York, 632 F.2d 185, 191 (2d Cir. 1980). Plaintiff's excessive force claim, which is premised upon an alleged injury suffered at the time of his arrest, accrued on the date of the arrest and therefore is untimely.

With respect to Plaintiff's false arrest claim, the Court's analysis is controlled by Wallace v. Kato, 549 U.S. 384 (2007). In Wallace, the Supreme Court distinguished between false arrest and false imprisonment claims, which "consist[] of detention without legal process," and malicious prosecution claims, "which remed[y] detention accompanied, not by the absence of legal process, but by wrongful institution of legal process." Id. at 389-90. In the case of the former, the Wallace Court held that accrual occurs when legal process is initiated and the allegedly false imprisonment or arrest comes to an end:

> [P]etitioner's contention that his false imprisonment ended upon his release from custody, after the State dropped the charges against him, must be rejected. It ended much earlier, when legal process was initiated against him, and the statute [of limitations] would have begun to run from that date, but for its tolling by reason of petitioner's minority.

Id. at 390. Here, legal process was initiated against the Plaintiff when the Grand Jury issued the Indictment on October 4, 2002. Plaintiff's damages period for a claim premised upon detention without due process therefore ended on that date. As this accrual date occurred more than three years before the date Plaintiff initiated this action, Plaintiff's false arrest claim is untimely.

*Plaintiff's Malicious Prosecution Claim*

In adjudicating a malicious prosecution claim pursuant to section 1983, the Court must "borrow the elements of the underlying malicious prosecution tort from state law." Cook v. Sheldon, 41 F.3d 73, 79 (2d Cir. 1994). "The elements of a malicious prosecution claim under New York law are: (1) that the defendant initiated a prosecution against the plaintiff; (2) that the defendant lacked probable cause to believe the proceeding could succeed; (3) that the defendant acted with malice; and (4) that the prosecution was terminated in plaintiff's favor. In order to state a cause of action for malicious prosecution under § 1983, Plaintiff must also assert that there was a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." Rohman v.

New York City Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000) (internal citations and quotation marks omitted).  A grand jury indictment creates a presumption of probable cause for the purposes of a malicious prosecution claim under New York law.  This presumption may only be rebutted by demonstrating that the indictment was procured by "fraud, perjury, the suppression of evidence by the police or other police conduct undertaken in bad faith."  Green v. Montgomery, 219 F.3d 52, 60 (2d Cir. 2000).

In attempting to demonstrate that the prosecution proceeded without probable cause, Plaintiff points to various purported inconsistencies in the evidence, arguing that there are questions as to whether the items seized in Plaintiff's arrest were actually illegal narcotics and whether Plaintiff was properly identified as "J.D. Beige Pants."  However, Plaintiff has not proffered any evidence to frame a genuine issue of material fact as to whether the Grand Jury Indictment was procured by the type of official chicanery necessary to overcome the presumption of probable cause in Defendants' favor.  In an attempt to proffer evidence that the Indictment was secured on the basis of misleading information, Plaintiff relies on Detective Williams' concession that she provided the DA's Office with an affidavit declaring that the transaction took place within 1,000 feet of a school without having actually measured the distance.  However, there is no evidence in the record that Detective Williams made her estimate in bad faith and, moreover, there is no evidence that the estimate was incorrect.  Accordingly, Plaintiff has not framed a genuine issue of material fact as to the integrity of the Grand Jury proceeding.  Nor has Plaintiff proffered any evidence sufficient to frame a genuine issue of material fact as to whether Defendants acted with actual malice.  These shortcomings are fatal to Plaintiff's claim and obviate the need for further inquiry into the other elements of the malicious prosecution claim.  See Brogdon v. City of New Rochelle, 200 F. Supp. 2d 411, 423 (S.D.N.Y. 2002) (granting defendants' motion for summary judgment on plaintiff's malicious prosecution claim

because "there must be a showing of some deliberate act punctuated with awareness of conscious falsity to establish malice [and] [t]here is nothing in this record evincing even an inference of a motivation on the part of defendants to pursue [plaintiff] for any purpose other than to see the ends of justice served").

*Plaintiff's <u>Monell</u> Claim Against the City of New York*

Plaintiff asserts that the City of New York should be liable for damages due to its failure to train officers of the New York City Police Department to determine properly the distance between the location where a narcotics offense is committed and school grounds. Plaintiff also asserts that the City should be liable on account of its purportedly negligent mismanagement of the DA's Office. Under <u>Monell v. Dep't of Social Services</u> and its progeny, Plaintiff must demonstrate that he was deprived of a right, privilege or immunity guaranteed by the Constitution or the laws of the United States. <u>Parrat v. Taylor</u>, 451 U.S. 527, 535 (1981). Plaintiff must identify a causal connection between the municipal policy and the deprivation of his constitutional rights. <u>Vippolis v. Village of Haverstraw</u>, 768 F.2d 40, 44 (2d Cir. 1985). Plaintiff's various claims against the City of New York all fail because Plaintiff has not established in the first instance that he was deprived of a constitutionally protected right.

As previously explained, Plaintiff has not proffered evidence sufficient to frame a genuine issue of material fact as to whether his incarceration was the result of unlawful malicious prosecution, nor has Plaintiff framed a genuine issue of material fact as to any other constitutional violation. Irrespective of whether the New York City Police Department or the DA's Office had adequate procedures in place to determine the distance between a narcotics offense and school grounds, Plaintiff has not proffered evidence to enable a reasonable fact finder to conclude that any such deficiency caused him a constitutional injury; Plaintiff has not even proffered evidence to

demonstrate that the determination in his case was incorrect. Plaintiff's assertion that the DA's Office was negligent for its failure to keep a record as to why his case was dismissed cannot support a Monell claim because it is not causally connected to any deprivation of a constitutional right. See Vippolis, 768 F.2d at 44. Plaintiff's assertion that the DA's Office was negligent in its failure to conduct further scientific testing beyond the field test on the drugs seized in his arrest is similarly unconnected to a demonstrated deprivation of a constitutional right and thus similarly fails. Id. In sum, Plaintiff's claims against the City of New York cannot survive the motion for summary judgment as a matter of law because Plaintiff cannot frame a genuine issue of material fact as to any deprivation of his constitutional rights. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) ("neither Monell v. Dep't of Social Services, nor any of our other cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm").

## CONCLUSION

Defendant's motion for summary judgment as a matter of law is granted in its entirety and Plaintiff's claims against the City of New York, Detective Williams and the New York City Police Department are dismissed. Plaintiff's claims against defendant "John Doe" (Shield No. 13912) are dismissed without prejudice pursuant to Rule 4 of the Federal Rules of Civil Procedure. The Clerk of Court is respectfully requested to enter judgment accordingly and close this case. This

Opinion and Order resolves docket entry no. 32.

        SO ORDERED.

Dated: New York, New York
      September 17, 2009

                                                  LAURA TAYLOR SWAIN
                                                  United States District Judge